**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**SCOTTSDALE INSURANCE COMPANY,**

**Plaintiff,**

**vs.**

**PORT ANTIGUA TOWNHOUSE ASSOCIATION, INC. AND PATRICK H. FLANIGAN & ASSOCIATES, LLC**

**CASE NO.**

**Defendants.**
_______________________________________ /

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C § 2201, Rule 57 of the Federal Rules of Civil Procedure, Plaintiff, Scottsdale Insurance Company ("Scottsdale"), hereby files this complaint against Defendants, Port Antigua Townhouse Association, Inc. ("Association"), and Patrick H. Flanigan & Associates, LLC ("Flanigan"), and seeks declaratory judgement for the purpose of determining a question of actual, immediate controversy among the parties.

## PARTIES

1. At all material times, Plaintiff Scottsdale was, and still is, a foreign corporation, incorporated in the state of Ohio, with its principal place of business in the state of Arizona. Scottsdale is eligible to transact insurance business in the State of Florida pursuant to the Florida Surplus Lines Law, § 626.913, Fla. Stat., et seq.

2. At all material times, Defendant Port Antigua Townhouse Association, Inc. was and is a Florida corporation, duly authorized and licensed to do business in the state of Florida, and with its principal place of business in Monroe County, Florida.

3. At all material times, Defendant Patrick H. Flanigan & Associates, LLC was and is a Florida limited liability company, duly authorized and licensed to do business in the state of Florida, and with its principal place of business in Broward County, Florida. According to the most recent annual report filed with the Florida Secretary of State, Division of Corporations, Flanigan is comprised of one member, Patrick H. Flanigan, who resides in Broward County, Florida.

4. At all material times, the Association served as the Townhouse Homeowner's Association for the properties located on El Capitan Drive, Islamorada, Florida 3306 (the "Property").

5. On or about August 1, 2023, the Association filed suit against Flanigan in the action styled *Port Antigua Townhouse Association, Inc. v. Patrick H. Flanigan & Associates, LLC*, Case No. 23-CA-000314, in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe, County Florida ("the Underlying Lawsuit").

6. Scottsdale is defending Flanigan in the Underlying Lawsuit subject to a reservation of rights under the issued Policies to deny coverage for defense and indemnity based on certain policy provisions.

7. As the named insured in the Policies, Flanigan is a necessary party to this declaratory judgment action for a determination of whether the Policies provide coverage to it for the claims made and damages sought against it in the Underlying Lawsuit.

8. As the Plaintiff in the Underlying Lawsuit, the Association is a necessary party to this declaratory judgment action for a determination as to whether the Policies provide coverage for defense and indemnity to Flanigan for the claims and damages sought in the Underlying Lawsuit.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds the sum of 75,000, exclusive of attorney's fees and costs for this action.

10. Venue is Proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred within the District, and the Defendants reside within the district.

## NATURE OF THE CLAIM

11. This is an action for Declaratory Judgement pursuant to 28 U.S.C. § 2201 for the purpose of construing and interpreting the terms of an insurance contract and for a determination of the rights and obligations, if any, of the parties arising from the policies of insurance issued by Scottsdale to Flanigan.

12. An actual controversy exists among the parties regarding the extent to which any coverage is afforded to Flanigan under the Policies for the claims made by the Association in the Underlying Lawsuit.

13. All conditions precedent to filing this action have been performed or have occurred.

## THE INSURANCE POLICIES

14. Scottsdale insured Flannigan under policy number RBS0012665 for the policy period of September 27, 2018 to September 27, 2019 (the "2018 Policy") and policy number RBS0022660 for the policy period of September 27, 2019 to September 27, 2020 (the "2019 Policy") (collectively, the "Policies"), subject to the terms, conditions, limitations, and definitions

contained within the Policies. A true and correct copy of the Policies is attached as **Exhibit "A"** and is incorporated as if fully set forth herein.

15. The Limits of Liability under the Contractors Shield Commercial General Liability Policy for Coverage A—Bodily Injury, Property Damage, Personal and Advertising Injury Liability in the Policies are $1,000,000 each occurrence and $2,000,000 general aggregate.

16. The Insuring Agreement in Paragraph A.1 of Section I Coverages, Coverage A—Bodily Injury, Property Damage, Personal and Advertising Injury Liability states that Scottsdale will "pay those sums that an insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies" that is caused by an "occurrence" and will defend the insureds as defined in paragraphs A. or B. of Section II— Who Is An Insured against "any suit seeking damages to which this insurance applies." (*See* Ex. A at Form SDS-P-1 (1-18)).

17. The first paragraph of Coverage A—Bodily Injury, Property Damage, Personal and Advertising Injury Liability states that Scottsdale "may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine" whether it owes "a duty to defend or indemnify against a **suit**," and that Scottsdale "may rely on extrinsic evidence to deny the defense and/or indemnity of a **suit**." (*See* Ex. A at Form SDS-P-1 (1-18)).

18. Property damage is defined in relevant part under the Policies to "mean physical injury to tangible property, including all resulting loss of use of that physically injured property … Normal wear and tear of property is not property damage." (*See* Ex. A at Form SDS-P-1 (1-18)).

19. Coverage under the Policies is subject to the following Condominium and Townhouse exclusion, which states in relevant part:

> **18.** CONDOMINIUM AND TOWNHOUSE
>
> **Bodily injury** or **property damage** arising out of, related to or in any way connected with any original construction, reconstruction, rebuilding, remodeling, restoration, renovation, repair, re-roofing, upgrading, improvement, refurbishing or development of any condominium or townhouse.
>
> This exclusion applies to any building or structure that has been converted, is undergoing conversion or that is converted at any future time into a condominium or townhouse regardless of whether the work or product of any insured was performed, incorporated or supplied before, during or after the conversion.
>
> This exclusion does not apply to **your work** for, or **your product** supplied to an individual unit owner within a condominium or townhouse development or converted project pursuant to a contract even if the contract was negotiated through the owner association providing that **your work** or **your product** was:
>
> **a.** Performed or supplied after the original construction or conversion was completed and the premises had been occupied; and
> **b.** Not related to, in connection with or involving the repair, renovation or replacement of **your work** or **your product** that was performed or supplied prior to the insurance of a certificate of occupancy.

(*See* Ex. A at Form SDS-P-1 (1-18)).

20. Coverage under the Policies is subject to the following Independent Contractors exclusion, which states in relevant part:

> **48.** INDEPENDENT CONTRACTORS
>
> Any **claim** or **suit** arising, in whole or in part, out of the actions or inactions of or the materials provided by an independent contractor performing work on behalf of an insured or the actions or inactions of the independent contractor's **employees,** laborers, suppliers or vendors.



PD.53874435.1

This exclusion will not apply if:

**a.** Prior to an independent contractor commencing work, services or operations or supplying products or materials for or on behalf of any **insured,** the **insured** receives a written agreement providing that:

**(1)** The independent contractor will indemnify and hold the **insured,** its partners, officers, agents and **employees** harmless against all liability, **claims,** judgments, **suits** or demands by any third-party, including any other **insureds,** arising out of or related to the work or product of the independent contractor;

**(2)** The independent contractor will at its own expense defend any **suit** brought against the **insured** founded upon a **claim** for damage sustained by any third-party arising out of or related to the work or product of the independent contractor

**(3)** The independent contractor's obligation to defend and indemnify will arise at the time written notice of the **claim** or **suit** is first provided to an **insured** regardless of whether the independent contractor is named as party to the **claim** or **suit;** and

**(4)** The independent contractor will name the **insured** as an **additional insured** on the independent contractor's Commercial General Liability policy with at least the following limits of liability: $1 million General Aggregate; $1 million Completed Operations (Products) Aggregate; and $1 million per occurrence. The endorsement will provide coverage for the independent contractor's completed work and will specify that the independent contractor's insurance is primary to any insurance issued by **us** to the **insured**

**b.** Prior to an independent contractor commencing work, services or operations or supplying products or materials for or on behalf of any **insured,** the **insured** will obtain and thereafter maintain valid and enforceable Certificates of Insurance and additional insured endorsements issued by or on behalf of the insurance carrier from each and every independent

contractor indicating that the **insured** is named as an **additional insured** and that the coverage maintained is equal to or greater than provided by this policy for the entire time the independent contractor is performing work or providing materials on behalf of the **insured** and that coverage is provided for both on-going and **products-completed operations hazard.** The policy carried by the independent contractor shall be primary and non-contributory as regards the **insured's** policy as well as containing a waiver of subrogation against the **insured.**

The **insured** will maintain the Certificates of Insurance and additional insured endorsements for no less than ten (10) years after the completion of the project on which the independent contractor provided work, products or materials so that the Certificates and endorsements can be provided to **us.**

**c.** It is expressly agreed by the **insured** that if the **insured** fails to comply with the conditions stated in paragraphs **a.** and **b.** above, then the exclusion remains effective.

**d.** It is expressly agreed by the **insured** that if the **insured** fails to comply with the conditions stated in paragraphs **a.** and **b.** above, then there is no coverage for any **claim** or **suit** arising out of or related in any way to the work of or materials provided the **insured** even if the work or materials of the **insured** is independent of or separate from the work or of materials provided by the independent contractor.

**e.** It is expressly agreed by the **insured** that the consequences set forth in paragraph **c.** and **d.** will apply even if the independent contractor is a party to the **claim,** demand or **suit** and has insurance which is participating in the defense and indemnification of the independent contractor.

**f.** It is further expressly agreed by the **insured** that the consequences set forth in paragraph **c.** and **d.** will apply even if the failure to comply with the conditions of paragraph **a.** and **b.** do not increase **our monetary obligation for defense or indemnification.**

> **g.** The coverage provided by this policy shall apply excess over and above any other valid and collectible insurance available to the **insured** by virtue of the additional insured endorsements provided by an independent contractor.
>
> **h.** Paragraphs **a.** through **g.** apply even if the work commenced or the products were supplied prior to the inception of this policy.
>
> **i.** For purposes of this exclusion, any individuals, entities or companies, whether appropriately licensed or not, doing work or performing services for the **insured**:
>
> **(1)** Who are not specifcally identified on the **insured's** employment records as **employees,** are not compensated as **employees** and for which the **insured** has not obtained worker's compensation insurance; or
>
> **(2)** Which are not compensated through a payroll/staffing or professional employer organization ("PEO") service under contract to the **insured**;
>
> are full independent contractors for the purpose of this exclusion and the provisions of this exclusion apply in full.

(*See* Ex. A at Form SDS-P-1 (1-18)).

**THE UNDERLYING LAWSUIT**

21. On or about August 1, 2023, the Association filed the Underlying Lawsuit against Flanigan. A true and correct copy of the complaint filed in the Underlying Lawsuit ("the Underlying Complaint") is attached hereto as **Exhibit "B."**

22. The Underlying Complaint states one cause of action against Flanigan for negligence. (Ex. B at ¶ 11).

23. In the Underlying Complaint, the Association alleges that Flanigan was a general contractor hired to replace roofing systems on the Property. (Ex. B at ¶ 7).

24. In the Underlying Complaint, the Association alleges that Flanigan installed the roofing systems and after installation of the systems, water leaked into each of the Association's properties because of Flanigan's negligent work. (Ex. B at ¶ 8).

25. In the Underlying Complaint, the Association identifies itself as the Townhouse Homeowner's Association for the Property. (Ex. B at ¶ 6).

26. Under belief and information, the Townhouse Homeowner's Association Property includes a condominium consisting of three buildings, which each contain townhomes. A copy of the Declaration of Condominium of Port Antigua Townhouses, Monroe County, Florida is attached hereto as **Exhibit "C"**.

27. The Association alleges in the Underlying Complaint that Flanigan had a duty to use reasonable care to comply with Florida building codes and industry's best practices and to use reasonable care to protect the Association's Property from unreasonable and foreseeable risks during its work. (Ex. B at ¶¶ 12-13).

28. The Association alleges in the Underlying Complaint that Flanigan breached its duty by failing to conform to the required standard of care and by providing faulty and negligent work. (Ex. B at ¶ 14).

29. The Association further alleges in the Underlying Complaint that it suffered damages as a result of the alleged negligence due to resulting water leaks. (Ex. B at ¶ 16).

## COUNT I—DECLARATORY JUDGMENT
## CONDOMINIUM AND TOWNHOUSE EXCLUSION

30. Scottsdale adopts and incorporates by reference the allegations set forth in paragraphs 1—29 above as though completely and fully set forth herein.

31. There is an actual, present, and existing controversy among the parties to this lawsuit regarding coverage under the Policies for defense and indemnity for Flanigan because of the Association's claims for damages pled in the Underlying Lawsuit.

32. Scottsdale seeks a judgment declaring that coverage for the Association's claims for damages against Flanigan is excluded under Coverage A—Bodily Injury, Property Damage, Personal and Advertising Injury Liability of the Policies pursuant to the Condominium and Townhouse exclusion, which excludes coverage in relevant part for "**property damage** arising out of, related to or in any way connected with any original construction, reconstruction, rebuilding, remodeling, restoration, renovation, repair, re-roofing, upgrading, improvement, refurbishing or development of any condominium or townhouse." (Ex. A).

33. The Association alleges damages resulting from a water leak because of the alleged negligence by Flanigan in the replacement of roofing systems on the Property, which consists of three buildings containing townhomes. (*See* Ex. B & C).

34. The Association further identifies itself as a Townhouse Homeowner's Association for the Property. (Ex. A).

35. Based on the allegations in the Underlying Complaint, the Condominium and Townhouse exclusion in the Policies applies to preclude coverage under Coverage A for the alleged damages against Flanigan in the Underlying Lawsuit as property damage "related in any way" to the roofing services performed on the condominium.

36. Therefore, Scottsdale has no duty to defend or indemnify Flanigan for the claims made and damages sought in the Underlying Lawsuit.

**COUNT II—DECLARATORY JUDGMENT**
**INDEPENDENT CONTRACTOR EXCLUSION**

37. Scottsdale adopts and incorporates by reference the allegations set forth in paragraphs 1—29 above as though completely and fully set forth herein.

38. There is an actual, present, and existing controversy among the parties to this lawsuit regarding coverage under the Policies for defense and indemnity for Flanigan because of the Association's claims for damages pled in the Underlying Lawsuit.

39. Scottsdale seeks a judgment declaring that coverage for the Association's claims for damages against Flanigan is excluded under Coverage A—Bodily Injury, Property Damage, Personal and Advertising Injury Liability of the Policies pursuant to the Independent Contractor exclusion, which excludes coverage in relevant part for "Any **claim** or **suit** arising, in whole or in part, out of the actions of or the materials provided by an independent contractor performing work on behalf of an insured or the actions or inactions of the independent contractor's **employees**, laborers, suppliers, or vendors." (Ex. A).

40. The Association alleges damages resulting from a water leak because of the alleged negligence by Flanigan in the replacement of roofing systems on the Property, which is work that Flanigan contracted in part to Roof Technologies, LLC. A copy of the roof agreement between Roof Technologies, LLC and Flanigan is attached hereto as **Exhibit "D."**

41. The roof agreement between Flanigan and Roof Technologies, LLC specifies that the agreement pertains to reroofing for the project "Port Antigua Townhouse Association 100 El Capitan Dr. Islamorada, FL 33036" and states under the scope of work section that "Roof Technologies, LLC agrees to install a Firestone roof system per NOA # 16-0307.01." (Ex. D).

42. Flanigan also contracted with Gizmo Builders, Inc. to perform the roof work for the metal roofs on the Property. A copy of invoices from Flanigan to Gizmo Builders, Inc is attached hereto as **Exhibit "E."**

43. Based on the foregoing, the Independent Contractor exclusion in the Policies applies to preclude coverage under Coverage A for the alleged damages against Flanigan in the Underlying Lawsuit as a claim arising "out of the actions of or the materials provided by an independent contractor performing work on behalf of an insured." (Ex. D).

44. Therefore, Scottsdale has no duty to defend or indemnify Flanigan for the claims made and damages sought in the Underlying Lawsuit.

**WHEREFORE,** Scottsdale requests this Honorable Court to enter judgment in its favor declaring that:

(a) The Policies' Condominium and Townhouse exclusion applies to preclude coverage to Flanigan for the Association's claim for damages against Flanigan pled in the Underlying Complaint;

(b) The Policies' Independent Contractor exclusion applies to preclude coverage to Flanigan for the Association's claim for damages against Flanigan pled in the Underlying Complaint;

(c) Scottsdale has no duty under the Policies to defend Flanigan against the Association's claim for damages pled in the Underlying Lawsuit;

(d) Scottsdale has no duty under the Policies to indemnify Flanigan for any damages awarded to the Association in the Underlying Lawsuit;

(e) Upon a declaration by the Court of no duty to defend, Scottsdale has the right to withdraw its defense of Flanigan in the Underlying Lawsuit; and

(f) Granting Scottsdale any further relief this Court deems proper.

Respectfully submitted,

**PHELPS DUNBAR LLP**

/s/ Mallory H. Thomas
Mallory H. Thomas Fla. Bar No.: 0112212
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602
Telephone: 813 472 7550
Facsimile: 813 472 7570
Email: mallory.thomas@phelps.com

*Attorney for Plaintiff, Scottsdale Insurance Company*